# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JOSEPH PAUL,
    Prisoner,

v.                                    Case No. 8:24-cv-2517–KKM–AAS
                                        Case No. 8:22-cr-297-KKM-AAS

UNITED STATES OF AMERICA,
    Respondent.
_____

## ORDER

Prisoner Joseph Paul moves to vacate his 144-month sentence for possession with intent to distribute methamphetamine. *See* 28 U.S.C. § 2255. Paul claims that counsel rendered constitutionally ineffective assistance at sentencing by not advocating for safety-valve relief. Because his claim lacks merit, his motion to vacate is denied.

**I.    Background**

A grand jury indicted Paul with one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count One), and one count of possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Two). (Crim. Doc. 1.) Under a plea agreement, Paul pleaded guilty to Count One, and the United States agreed to dismiss Count Two from the indictment. (Crim. Doc. 35.) The United States agreed to recommend a downward departure from the sentencing guidelines range if it determined

that Paul provided substantial assistance in the investigation or prosecution of others. (*Id*. at 4–5.)

The presentence report calculated an advisory guidelines range of 140 to 175 months based on Paul's total offense level of 29 and his criminal history category of V. (Crim. Doc. 46 at ¶ 75.) Paul faced a mandatory minimum sentence of ten years. (*Id*. at ¶ 74.) At sentencing, the district court acknowledged Paul's "lengthy criminal history" and his failure to cooperate with the United States before sentencing him to 144 months. (Crim. Doc. 52; Crim. Doc. 57 at 25 and 28.)

Paul filed no appeal. He now moves to vacate his sentence and claims that counsel rendered ineffective assistance at sentencing by not advocating for safety-valve relief. (Civ. Doc. 1.) He urges the district court to vacate his sentence and to grant him safety-valve relief upon resentencing. (*Id*. at 12.) The United States responds that Paul's claim lacks merit. (Civ. Doc. 6.)

An earlier order notifies Paul that he may reply no later than thirty days after the United States responds. (Civ. Doc. 3.) The United States filed its response March 7, 2025. Paul has not replied or sought an extension of time to do so.

## II.   Legal Standards

Section 2255 allows a federal prisoner to "bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215–16 (11th Cir. 2014). But "[o]nce the defendant's chance to appeal has been waived or exhausted, [a

court is] entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (*per curiam*) (citing *Frady*, 456 U.S. at 165). Because collateral review is not a substitute for direct appeal, a defendant must raise on direct appeal all available claims. Relief under Section 2255 is reserved "for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep. 1981)). For example, a claim of ineffective assistance of counsel is a claim that "should usually be raised in a motion under 28 U.S.C. § 2255." *United States v. Curbelo*, 726 F.3d 1260, 1267(11th Cir. 2013).

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In

3

> *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or

4

omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Paul must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Paul must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. A prisoner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether

5

> the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## III. Ground One

Paul claims counsel rendered constitutionally ineffective assistance at sentencing by not advocating for safety-valve relief. (Civ. Doc. 1-1 at 1–8.) He insists that he was entitled to safety-valve relief under *United States v. Garcon*, 54 F.4th 1274 (11th Cir. 2022), *abrogated by Pulsifer v. United States*, 601 U.S. 124 (2024). He argues that he lacked each of the disqualifying criminal-history characteristics for safety-valve relief under § 3553(f)(1).

Section 3553(f)(1) provides that, for certain enumerated offenses, including offenses under 21 U.S.C. § 841:

> [T]he court shall impose a sentence pursuant to [the United States Sentencing Guidelines] . . . without regard to any statutory minimum sentence, if the court finds at sentencing . . . , that—
> (1) the defendant does not have—

6

> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
> (B) a prior 3-point offense, as determined under the sentencing guidelines; and
> (C) a prior 2-point violence offense, as determined under the sentencing guidelines[.]

In *United States v. Garcon*, the circuit court held that the word "and" in § 3553(f)(1) was conjunctive and that a defendant must have all three disqualifying criminal-history characteristics—more than four qualifying criminal-history points, a prior three-point offense, and a prior two-point violence offense—before he becomes ineligible for safety-valve relief. 54 F.4th 1274, 1278 (11th Cir. 2022) (en banc), *abrogated by Pulsifer*, 601 U.S. at 132 & n.1. *Garcon*, which issued in December 2022, was controlling law at the time of Paul's sentencing.[1]

---

[1] After *Garcon*, the U.S. Supreme Court held that § 3553(f)(1) "creates an eligibility checklist" that demands a defendant satisfy each condition before he is eligible for safety-valve relief. *Pulsifer*, 601 U.S. at 132. *Pulsifer* expressly abrogates the reasoning in *Garcon* by rejecting a conjunctive reading of the word "and" in § 3553(f)(1). *Id*. at 133. "In other words, a defendant is eligible for safety-valve relief if he does not have more than four criminal-history points, does not have a prior three-point offense, and does not have a prior two-point violent offense." *United States v. Sapp*, No. 23-11121, 2024 WL 4799711, at *1 (11th Cir. Nov. 15, 2024) (citing *Pulsifer*, 601 U.S. at 153). "The presence of any of the three criminal-history characteristics in § 3553(f)(1) disqualifies a defendant from safety-valve relief." *Id*. (citing *Pulsifer*, 601 U.S. at 153); *see also United States v. Morley*, 99 F.4th 1328, 1343 (11th Cir. 2024) (noting *Pulsifer*'s abrogation of *Garcon* and finding that "a defendant who has *any* of the three criminal-history components under § 3553(f)(1) is disqualified from safety valve sentencing relief") (emphasis in original).

Paul "concedes he has more than 4 criminal history points and has a prior 3-point offense[;]" however, he correctly emphasizes that he lacks a prior two-point violence offense. (Civ. Doc. 1-1 at 3.) Because *Garcon* was controlling precedent at his sentencing, and because he lacked each of the disqualifying criminal-history characteristics enumerated in § 3553(f)(1), Paul argues, counsel should have advocated for safety-valve relief. (*Id*.)

However, Paul cannot show that counsel was constitutionally deficient in not pursuing safety-valve relief because, even under *Garcon*, he could not satisfy each of the eligibility requirements for safety-valve relief. In addition to the requirements of § 3553(f)(1), to be eligible for safety-valve relief, a defendant must also meet the requirements of § 3553(f)(2) through (f)(5), which require the court to find:

> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise . . . and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan[.]

18 U.S.C. § 3553(f)(2)–(f)(5); *see also Garcon*, 54 F.4th at 1279 ("[T]he sentencing court must find that a defendant satisfies each of subsections (f)(1) through (f)(5) before it may depart from a statutory minimum sentence.").

Paul argues that "[t]his was a simple possession of methamphetamine case." (Civ. Doc. 1-1 at 4.) According to Paul, counsel should have argued that the offense did not involve violence or a firearm, the offense did not result in death or serious bodily injury, he was not an organizer of the offense, and "he not only provided the government with all information concerning his illegal possession of Meth, but accepted full responsibility for his poor judgment." (Civ. Doc. 1-1 at 4–5.)

Paul's claim fails. The record shows Paul did not receive safety-valve relief, not because counsel's performance was deficient, but because he failed to comply with the "tell-all provision" of § 3553(f)(5) when he withheld information concerning his offenses from the United States during his proffer. *See United States v. Maisonet*, 121 F.4th 194, 201 (11th Cir. 2024) (explaining that "[t]he tell-all provision is not coextensive with . . . substantial assistance" but "merely requires that the defendant provide all the information he has not later than the time of the sentencing hearing") (quotations omitted). At sentencing, the United States notified the district court that, although Paul "was in a position to help himself with a substantial assistance motion . . . he did not avail himself [of that opportunity]." (Crim. Doc. 57 at 9.) Paul withheld his "knowledge of narcotics going from [Florida]

9

to Georgia[.]" (*Id*.) The United States observed, "counsel was very adamant in seeking that [substantial assistance] provision for him [in the plea agreement] and trying to afford him the opportunity to help himself" but "he didn't avail himself of that opportunity." (*Id*.)

Counsel confirmed that Paul attempted to cooperate, but while he was in jail, he was threatened by an inmate to "keep his mouth closed." (*Id*. at 15–16.) Paul met with a case agent, but ultimately "only was able to relate a certain amount of information" because of "significant concern for his safety." (*Id*. at 16.) "[T]he agent was not able to follow up and do anything with it." (*Id*.)

Before imposing Paul's sentence, the district court acknowledged Paul's failure to cooperate with the United States (*id*. at 28):

> You agreed to cooperate with the United States when you entered a plea agreement. [The United States] said you did not comply with that. There might be many reasons, I do not question the veracity of why you might not cooperate. I realize it comes with risks, cooperating, but it's something that I think your counsel sought for you to take advantage of and you didn't and, as a result, there's no Rule 5K motion before the Court.

Although counsel did not advocate for safety-valve relief, Paul cannot show that "no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. The record shows counsel successfully advocated for Paul's plea agreement to contain a cooperation

10

provision. Despite having an opportunity to assist the United States in the prosecution of others, Paul decided to withhold his "knowledge of narcotics going from [Florida] to Georgia[.]"(Crim. Doc. 57 at 9.) As a result, he was ineligible for safety-valve relief because he could not show that he "truthfully provided to the Government all information and evidence [he] has concerning the offense or offenses" as is required under § 3553(f)(5). *See United States v. Figueroa*, 199 F.3d 1281, 1283 (11th Cir. 2000) ("[The] plain language [of § 3553(f)(5)] requires a defendant to both truthfully and fully disclose information within [his] knowledge relating to the crime for which [he] is being sentenced[,] [and] [§3553(f)(5)] does not permit the safety valve to be applied merely because information a defendant chooses to withhold . . . would not . . . be of use to the government."). This is true regardless of Paul's fear that his safety would be jeopardized by his full disclosure of information about his offenses to the United States. *See United States v. Bowe*, No. 22-10054, 2022 WL 5238710, at *2 (11th Cir. Oct. 6, 2022) (affirming the denial of safety-valve relief because "[n]othing in [§ 3553(f)(5)] can reasonably be construed to support an exception for cases where a defendant fears harm from full and truthful disclosure"). Therefore, any argument by counsel for safety-valve relief would have been futile, and counsel is not constitutionally ineffective for not raising a meritless claim. *Hollis v. United States*, 958 F.3d 1120, 1124 (11th Cir. 2020); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015).

Furthermore, Paul cannot show that he was prejudiced by counsel's performance. To demonstrate prejudice, Paul must show "a reasonable probability that the result of the proceeding—i.e., the length of his sentence—would have been different absent counsel's allegedly deficient performance." *United States v. Simmons*, 799 F. App'x 718, 722 (11th Cir. 2020) (citing *Griffith v. United States*, 871 F.3d 1321, 1330 (11th Cir. 2017)). Paul cannot show he was prejudiced by counsel's failure to pursue safety-valve relief because he cannot satisfy each of the factors under § 3553(f). S*ee Lynch v. United States*, No. 16-16243, 2017 WL 4570524, at *10 (11th Cir. June 26, 2017) (concluding prisoner could not show he was prejudiced by counsel's performance because he "has not presented any evidence affirmatively establishing that he in fact provided complete and truthful information to the government, such that he was entitled to safety valve relief"); *Patton v. United States*, 259 F. App'x 194, 196 (11th Cir. 2007) (concluding prisoner could not show she was prejudiced by counsel's failure to pursue safety-valve relief when she "was not willing to disclose *all information and evidence*" about her offenses to the United States) (emphasis in original). Accordingly, Paul has not shown a reasonable probability of a different sentence absent counsel's performance.

## V.   No Certificate of Appealability

Paul is not entitled to a certificate of appealability (COA). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court

12

must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Paul must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Paul is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

## VI. Conclusion

Paul's motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 1) is **DENIED** and a certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is similarly **DENIED**. Paul must obtain permission from the circuit court to appeal in forma pauperis. The clerk is directed to enter a **JUDGMENT** against Paul, terminate any pending motions, **CLOSE** this case, and enter a copy of this order in the criminal case.

**ORDERED** in Tampa, Florida, on June 10, 2025.

Kathryn Kimball Mizelle
United States District Judge